JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| FELIPE DELGADO and QUINTON BICKLEY, on BEHALF of THEMSELVES INDIVIDUALLY and ALL OTHERS SIMILARLY SITUATED,<br><br>    Plaintiffs,<br><br>    vs.<br><br>ORTHO-MCNEIL, INC., a New Jersey corporation; JANSSEN ORTHO-MCNEIL PRIMARY CARE, INC., a New Jersey corporation; JANSSEN L.P.; and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No.: SACV 07-00263-CJC(MLGx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION** |

**I.    INTRODUCTION**

Plaintiffs Felipe Delgado and Quinton Bickley (collectively "Plaintiffs") claim their former employers, Defendants Ortho-McNeil, Inc., Janssen Ortho-McNeil Primary Care, Inc., and Janssen L.P. (collectively "Ortho"), violated the Federal Fair

Labor Standards Act ("FLSA") and similar California wage-and-hour laws by not paying overtime for their work as pharmaceutical sales representatives. Ortho moves for summary judgment on the basis that Plaintiffs are exempt from overtime because they fall under either the outside salesman exemption or the administrative exemption to wage-and-hour laws. Plaintiffs also make a cross-motion for summary adjudication on the question of whether they fall under the outside salesman exemption and contend there is an issue of fact as to the administrative exemption. After carefully considering the undisputed evidence presented by the parties and the arguments of their counsel, the Court concludes that Plaintiffs fall under the outside salesman exemptions of both the FLSA and California state law. Accordingly, Ortho's motion for summary judgment is GRANTED and Plaintiffs' motion for summary adjudication is DENIED.

## II.   FACTUAL BACKGROUND

Mr. Delgado and Mr. Bickley were employed as pharmaceutical sales representatives with Ortho. Both employees referred to themselves as sales representatives. Both worked largely outside the office, meeting with physicians with the overriding purpose of increasing the amount of Ortho drugs those physicians prescribed. (Defendants' Statement of Uncontroverted Facts for Mr. Bickley ("DUFB") ¶ 15; Defendants' Statement of Uncontroverted Facts for Mr. Delgado ("DUFD") ¶¶ 8, 15, 73.)

Mr. Bickley's primary duties were: (1) asking physicians and nurses to write prescriptions for Ortho drugs; (2) "closing" physicians by gaining commitments from them to prescribe Ortho drugs; (3) developing his "selling skills;" (4) visiting pharmacies; and (5) taking physicians to meals to discuss Ortho medications (DUFB ¶¶ 33, 34, 42, 46, 90-91.) Ortho tracked the number of prescriptions issued by

physicians in Mr. Bickley's territory. Ortho used these sales numbers to determine his "incentive compensation." (DUFB ¶¶ 23, 24.) Mr. Delgado had similar duties and conditions of employment. Mr. Delgado's job was to call on physicians and sell the benefits of Ortho drugs in order to increase the number of prescriptions physicians wrote for those drugs. (DUFD ¶ 11.) Mr. Delgado did this by engaging in the "selling process." (DUFD ¶ 19.) He received training to improve his "selling skills." (DUFD ¶ 40.) Ortho also trained Mr. Delgado to "close" each call by asking physicians to prescribe certain Ortho drugs. (DUFD ¶ 45.) He also managed his territory by routing his calls on physicians. (DUFD ¶ 81.) Mr. Delgado's incentive compensation was based on the number of prescriptions that physicians in his territory wrote. (DUFD ¶ 30, 31.)

### III.   ANALYSIS

Summary judgment is proper if the evidence before the Court "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating that there are no genuine material issues, and that it is entitled to judgment as a matter of law. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Once this burden has been met, the party resisting the motion "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *United States v.*

*Diebold, Inc.*, 369 U.S. 654, 655 (1962). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992).

Congress enacted the FLSA to promote the "general well being" of workers by eliminating detrimental labor conditions. 29 U.S.C. § 202(a). To that end, the FSLA requires:

> Except as otherwise provided in this section, no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). However, businesses are exempt from providing overtime compensation to "white collar" positions, including outside salesmen and administrative employees. 29 U.S.C. 213(a)(1). These exemptions were justified because these kinds of workers "typically earned salaries well above fringe benefits and [received] better opportunities for advancement, setting them apart from the nonexempt workers entitled to overtime pay." Department of Labor, Wage and Hour Division, Defining and Delimiting the Exemptions for Executive, Professional, Outside Sales and Computer Employees; Final Rule ("Final Rule") 69 Fed. Reg. 22122, 22123-24 (April 23, 2004). "Further, the type of work performed [by white collar workers] was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week, making compliance with the overtime provisions difficult. . . ." *Id.*

The United States Supreme Court held that exemptions to the FLSA overtime requirement "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably

within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.* 361 U.S. 388, 392 (1960). The employer bears the burden of showing that the plaintiff falls within the exemption. *Id.* at 393. The Ninth Circuit adheres to the United States Supreme Court's approach. *Alvarez v. IBP Inc.*, 339 F.3d 894, 905 ("[f]ollowing the Supreme Court's lead, we also read FLSA exemptions . . . tightly").

### A. The Outside Salesman Exemption in the FLSA

The FLSA provides that "any employee employed . . . in the capacity of an outside salesman" is exempted from the requirement of overtime. 29 U.S.C. § 213(a)(1). Federal Department of Labor regulations further defining the exemption provide that:

> (a) The term "employee employed in the capacity of outside salesman" in section 13(a)(1) of the Act shall mean any employee:
>
> (1) [w]hose primary duty is:
> (i) making sales within the meaning of section 3(k) of the Act. . . .

29 C.F.R. 541.500. The regulations further define sales as including:

> the transfer of title to tangible property, and in certain cases, of tangible and valuable evidences of intangible property. Section 3(k) of the Act states that "sale" or "sell" includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition.

29 C.F.R. § 504.501(b).

An employee's primary duty must be analyzed when determining if he or she fits into the outside salesman exemption. Federal regulations define the primary duty

as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). An employee's primary duty is "based on all the facts in a particular case, with the major emphasis on the character of an employee's job as a whole." *Id.* For these purposes, all work "performed incidental to and in conjunction with the employee's own outside sale or solicitations" must also be considered exempt. If it is determined that an employee makes sales, any work that contributes to those sales or is incidental to them must be taken into account to determine whether making sales is the employee's primary duty.

Federal regulations differentiate outside sales work from promotional work: "[p]romotional work that is incidental to sales made, or to be made, by someone else is not exempt outside sales work." 29 C.F.R. ¶ 541.503(a). For example, a manufacturer's representative who visits shops to put up displays and posters, rearrange merchandise, or remove spoiled stock, is performing promotional work, not sales work. 29 C.F.R. 541.503(b). A Department of Labor Opinion Letter determined that college recruiters who found qualified students and induced their application to college, but did not admit the students to the college, were engaged in promotions, not sales. Opinion Letter No. 2138 [1999-02 Wages-Hours] Lab. L. Rep. (CCH) ¶ 33030 (April 20, 1999).

In this case, the Court must determine whether Plaintiffs fall under the outside salesman exemption to the FLSA because they "make sales." The Court concludes that Plaintiffs do fall within this exemption. Pharmaceutical sales representatives do make sales: they convince physicians to prescribe Ortho drugs. These physicians' prescriptions are precisely the "other disposition" envisioned in the FLSA. The more prescriptions Plaintiffs' efforts generate, the more Plaintiffs themselves profit. These "pharmaceutical sales representatives" applied for their positions and were trained with the expectations that they would be compensated based upon their abilities to sell

Ortho's drugs. They received compensation as a result of their sales activities. If they hustled more, the physicians prescribed more, and Plaintiffs made more. The object of their harder work wasn't to garner overtime, it was to generate sales.

Although the FLSA's exemptions must be construed narrowly, they also must be interpreted in a manner that promotes the spirit and purpose of the exemptions. Concluding that Plaintiffs are covered by the outside salesman exemption promotes the spirit and purpose of that exemption. The Tenth Circuit provided an early and cogent description of the outside salesman exemption's rationale in *Jewel Tea Co. v. Williams*:

> The reasons for excluding an outside salesman are fairly apparent. Such [a] salesman, to a great extent, works individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

118 F.2d 202, 207-08 (10th Cir. 1941). The Tenth Circuit's holding in *Jewel Tea* is obviously driven by the common-sense notion that it is impractical to make outside salespeople hourly employees due to the lack of supervision and structure in their jobs, and because they generate additional incentive income, usually through commission, instead of overtime. This reasoning is also reflected by federal regulations, which cite the high salaries earned by white-collar workers as well as the difficulty of standardizing these workers' jobs as two justifications for the existence of exemptions to overtime requirements. 69 Fed. Reg. at 22124.

The FLSA requires employees to "make sales" in order to qualify for the outside salesman exemption. While no appellate court has addressed whether pharmaceutical sales representatives make sales for the purpose of falling under the outside salesman exemption, the Eight Circuit has affirmed a district court's answer to a similar question in the medical device industry, the question of who are the customers for medical devices, such as pacemakers, that are to be placed inside patients' bodies. The district court determined that physicians were the customers, although they were not actually purchasing the devices. *Medtronic v. Gibbons*, 527 F. Supp. 1085 (D. Minn. 1981), *aff'd* 684 F.2d 565 (8th Cir. 1982). The district court explained:

> The ultimate consumer[s] of pacemakers are cardiac patients, not hospitals or doctors. But the pacemakers are sold by the manufacturers to the hospital where the patient is being treated. The hospital purchases pacemakers on a recommendation from a physician . . . . Medtronic's sales effort focuses on the physicians and medical personnel. Thus, the term "customers" must include not only the hospital, which actually pays for the product, but also the physicians and surgeons who recommend which product to purchase.

*Id.* at 1094 n.3.

The holding in *Medtronic* is notable because the medical device industry is heavily regulated like the pharmaceutical industry. The Food and Drug Administration regulates almost every aspect of the pharmaceutical industry, from research to sales to labeling to advertising. Pharmaceutical sales representatives are forbidden from selling drugs to physicians. Additionally, physicians are ethically bound by their professional duty to prescribe only the most appropriate medication for their patients' treatment. Regulations and ethics preclude physicians from ever

making a binding commitment to a pharmaceutical sales representative to prescribe a certain drug. However, physicians here, like the physicians in *Medtronic*, directly control which, and how much, of any medication is purchased by patients. Physicians, not the end-users, select the appropriate medication. In the chain of pharmaceutical sales, the physicians are the decision makers.

In *IMS Health Inc. v. Ayotte*, the First Circuit recognized that pharmaceutical sales representatives with duties similar to Plaintiffs are very effective at selling their drugs. *IMS Health*, 550 F.3d 42 (1st Cir. 2008). The First Circuit described "detailing"—the process of representatives meeting with physicians to market the drugs, as selling. "The objective of these visits is to make sales." *Id.* at 69. "Detailing works: that it succeeds in inducing physicians to prescribe larger quantities of band-name drugs seems clear." *Id.* at 55. Furthermore, the First Circuit found "the fact that the pharmaceutical industry spends over $4 billion annually on detailing bears loud witness to its efficiency." *Id.* Although the First Circuit's decision does not take a position on the outside salesman exemption under the FLSA, it does offer a convincing description of pharmaceutical sales representatives' work as making sales.

A district court in *In Re Novartis Wage and Hour Litigation*, found that the FLSA's outside salesman exemption had to be construed to include pharmaceutical sales representatives in order to be consistent with the spirit and objectives of the exemption. *Novartis,* No. 06-MD-1794, 2009 WL 63433 (S.D.N.Y. Jan. 12, 2009) at *9. "[R]ecognizing the realities of the pharmaceutical industry is not incompatible with engaging in a narrow reading. To the contrary, it produces results that reflect the exemption's terms and spirit." *Id.* at *13. The district court reached its finding because the pharmaceutical representatives' job was to persuade physicians to prescribe Novartis drugs, and they were compensated based on their success in that

endeavor. *Id.* at *12-*13. The district court found that the representatives were also largely autonomous. *Id.*

Plaintiffs argue that, because they deal only with physicians and are not directly involved in the supply or distribution chain, the outside salesman exemption does not apply to them. The Court disagrees. Without physicians, no drugs would ever be sold to patients. While physicians are not a formal link in the drug-company-to-patient supply or distribution chain, they are, in fact, the lynchpins. Physicians, not pharmacies or distributors, prescribe the drugs to be purchased and administered.

Furthermore, the work of pharmaceutical sales representatives is not merely promotional within the meaning of the Department of Labor's regulations. The distinction drawn by the regulations is not one between selling and promotion. Rather, the regulations distinguish between promotional work that is done to promote others' sales, and promotional work that is done to promote sales for which the employee is credited and compensated. Plaintiffs' work promoting Ortho's drugs to physicians is directed toward increasing the amount of Ortho drugs prescribed in their territories, ultimately leading back to increased compensation for themselves. Indeed, both the evaluation of Plaintiffs' performance and their compensation depended, in large part, on the amount of Ortho drugs physicians in their territory prescribed.

Plaintiffs cannot escape the fact that they perform their duties in the way traditionally associated with outside salespeople. They spend the great majority of their time out of the office. They are not generally subject to direct supervision while they go about their business. They do not report to work first thing in the morning and clock in. They have a large degree of autonomy, which would make it more

difficult to make them accountable for every minute of their day.[1]  If they work harder, and excel, pharmaceutical sales representatives can convince more physicians to write prescriptions for the drugs they sell.  Then drug companies rewarded them with better performance evaluations and greater incentive compensation.  They are almost wholly unlike those workers who are traditionally nonexempt.  Plaintiffs and other pharmaceutical sales representatives are precisely the type of employees envisioned when Congress established the outside salesman exemption from the FLSA.  Plaintiffs fall under the outside salesman exemption.

## B. The Outside Salesman Exemption under California Law

California's wage-and-hour laws largely mirror the FLSA.  California law defines an outside salesman as "any person, 18 years of age or over, who customarily and regularly works more than half the working time away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services, or use of facilities."  Cal. Code Regs. Tit. 8 § 11070(2)(J).  The exemption is "purely quantitative" and "focuses entirely" on whether the employee spends more than half his or her time engaged in selling. *Ramirez v. Yosemite Water Co.*, 20 Cal 4th 785, 797 (Cal. 1999).[2]

---

[1] This feasibility of hours-based compensation is a factor that Department of Labor regulations take into account.  Final Rule at 22124.

[2] Several courts in this district have recently ruled that pharmaceutical representatives fall under California's outside salesman exemption. *See e.g. Barnick v. Wyeth,* 522 F. Supp. 2d 1257 (C.D. Cal. 2007).  In *Barnick,* the district court disregarded the fact that patients, not physicians are the end-users of pharmaceuticals, calling it "a distinction without a difference." *Id.* at 1264. The district court held:

> Nothing in the language of the outside salesperson exemption requires an exempted employee to engage in direct as opposed to indirect sales. Though it is true physicians never actually buy Wyeth's prescription products, it is clearly they who control the product's ultimate purchase. Because physicians determine

It was clear to the district court in *Novartis* that pharmaceutical sales representatives fell under California's outside salesman exemption because they spent their time outside the office, visiting physicians to convince them to prescribe certain drugs, so the sales representatives would receive credit for making the sales. *Novartis*, 2009 WL at *12. Similarly, Plaintiffs here have one duty—to speak to physicians on behalf of Ortho in order to persuade the physicians to prescribe Ortho drugs to their patients. As discussed above, this duty is best described as selling. Ortho has submitted no evidence to show that Plaintiffs' efforts were directed toward anything else. They were not researchers or accountants or distributors or delivery drivers who sold some of their employers' product while they performed their other duties. Plaintiffs were sales people, whose job was to plan routes, practice pitches, and arrange dinners and meetings where they would try to persuade physicians to prescribe more Ortho drugs. The vast majority of Plaintiffs' work goes toward fulfilling that duty, including undergoing sales training, arranging luncheons and dinners with physicians to discuss Ortho drugs with them, and driving to and from meetings with physicians. Simply put, Plaintiffs fall under the outside salesman exemption to California law.

---

whether or not a patient will buy a prescription product, it is they who are appropriately the target for sales efforts.

*Id*. The district court in *Barnick* and other courts in the Central District used an "indicia of sales" analysis taken from federal law to make their decisions. *Barnick*, 522 F. Supp. 2d at 1262. Because the employees were called salesmen, received training in sales, and were compensated, in part, based upon the amount of drugs the physicians in their territories prescribed, they fit under the outside salesman exemption.

## IV. CONCLUSION

For the foregoing reasons, Ortho's motion for summary judgment is GRANTED and Plaintiffs' motion for summary adjudication is DENIED.[3]

DATED: February 6, 2009

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

[3] Because Plaintiffs fall under the federal and state outside salesman exemptions from wage-and-hour laws, it is not necessary to resolve the question of whether the Plaintiffs also fall under the administrative exemption to wage-and-hour laws.